**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phoenix Premier Properties LLC, Debtor,<br><br>                              Appellant,<br><br>vs.<br><br>Federal National Mortgage Association, aka Fannie Mae,<br><br>                              Appellee. | No. CV-12-187-PHX-GMS<br><br>BK No. 2:10-bk-2837-RTB<br><br>**ORDER** |

Pending before the Court is an appeal from a final order of the United States Bankruptcy Court for the District of Arizona pursuant to 28 U.S.C. § 158.[1] For the following reasons, the Court affirms the decision below.

## BACKGROUND

On September 3, 2010, Phoenix Premier Properties, LLC, Appellant and Debtor-in-Possession, filed a voluntary petition to start Chapter 11 bankruptcy proceedings. (Doc. 12 at 3). Appellant filed a Plan of Reorganization, to which Appellee, Federal

---

[1] Defendants have requested oral argument. The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.,* 933 F.2d 724, 729 (9th Cir.1991).

National Mortgage Association ("FNMA") objected. Following two subsequent amended Plans of reorganization from Phoenix Premier, on October 26, 2011, the Bankruptcy Court heard argument as to whether the Plan was submitted in Good Faith. (Doc. 14 at 7).

Phoenix Premier owned a single piece of real property valued variously at $3.2 million and $2.3 million. (Doc. 12 at 3–4). The apartment complex secured a $2,132,000 claim held by FNMA. (Doc. 12 at 4). The FNMA loan came due in June 2010 and Phoenix Premier was unable either to repay the loan or to find lenders willing to refinance the property. *Id.* at 5.

On August 31, 2010, Debtor entered into an engagement agreement with Coleman & Deere ("C&D"), "debtor's pre-petition counsel for various landlord tenant matters." (Doc. 14 at 8). C&D was incorporated on the same date. (Doc. 13 at 6). C&D claims to have been unaware of the planned bankruptcy proceedings, but required $5,000.00 up-front at as an "evergreen retainer." *Id.* at 6–7. Debtor and C&D further agreed at or about this time that C&D would invoice Debtor for $1,000.00 in "earned fees," due immediately. *Id.* While Debtor paid the "evergreen retainer," which C&D holds in its trust account, Debtor never paid the $1,000. *Id.* at 11. This $1,000 is C&D's only claim against Debtor. (Doc. 12-5 at 61). On September 3, 2010, three days following C&D's incorporation and the execution of this agreement, Debtor filed its voluntary petition to start Chapter 11 bankruptcy proceedings. (Doc. 12 at 3).

Debtor's Second Amended Plan identified seven classes of creditors, of which two are relevant here. Class Three consisted of FNMA's secured, first priority lien, and Class Four consisted of C&D's claim secured by the amount held in trust. (Doc. 12 at 6). When

Debtor filed its "Report of Ballots for Debtor's Plan of Reorganization Dated May 6, 2011," C&D was the only consenting impaired claim. *Id.*

Under the Second Amended Plan, the terms of the proposed impairment were that Debtor would pay half of C&D's claim 30 days after the effective date of the Plan, and the second half 60 days after, and waive a late fee and interest due on the late amount. In return, C&D "[would] release the $5,000.00 security retainer being held in its trust account." (Doc. 13 at 11).

On November 30, 2011 the Bankruptcy Court ruled on the Good Faith Dispute, finding that "(i) the secured claim of Coleman & Deere, PLC was the Debtor's only possible consenting impaired class in the Bankruptcy Case,  [and] (ii) that the secured claim of Coleman & Deere, PLC could simply be offset by the retainer held by Coleman & Deere, PLC." As a result, the court further ordered that "Debtor's plan lacks the good faith requirement and the requirement of an accepting impaired class required by 11 U.S.C. §1129(a)(3)." (Doc. 13 at 4-5; Doc. 14-1 at 3).

Debtor Phoenix Premier appeals from this decision. FNMA, pursuant to 28 U.S.C. § 158(c)(1), has elected to have the appeal heard by this Court. (Doc. 1 at 1).

## DISCUSSION

### I.    Legal Standard

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews a Bankruptcy Court's conclusions of law *de novo,* and its findings of fact under the clearly erroneous standard. *Greene v. Savage*, 583 F.3d 614, 618 (9th Cir. 2009); FED. R. BANKR. P. 8013

("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). The question of whether a creditor is impaired is a question of law. *In re L & J Anaheim Associates*, 995 F.2d 940, 942 (9th Cir. 1993). By contrast, whether a Chapter 11 Reorganization Plan is submitted in good faith is a question of fact. *In re Ellsworth*, 455 B.R. 904, 914 (B.A.P. 9th Cir. 2011) (holding that a bankruptcy court's factual findings regarding a debtor's lack of good faith are reviewed for clear error). The clearly erroneous standard requires the Court to accept the bankruptcy court's findings of facts unless "the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *See Latman v. Burdette,* 366 F.3d 774, 781 (9th Cir. 2004).

## II.   Analysis

"[P]rovisions of the Bankruptcy Act . . . are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." *Local Loan Co. v. Hunt*, 292 U.S. at 245. Among the provisions, Chapter 11 establishes several requirements that must be in place for a plan to be accepted, two of which are relevant to the presenting case. First, under 11 U.S.C. § 1129(a)(10), a plan must be accepted by at least one impaired creditor. Second, under 11 U.S.C. § 1129(a)(3), a plan must also be submitted in good faith. Where a claim has been impaired only to force a cramdown, the proposed plan is not in harmony with the general purpose and policy of the Act and is indicative of bad faith. *In re L & J Anaheim Associates*, 995 F.2d 940, 942 (9th Cir. 1993); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 244 (3rd Cir. 2004); *In re*

*Hotel Associates of Tucson*, 165 B.R. 470 (B.A.P. 9th Cir. 1994).

"Bankruptcy provides a framework for the consensual and cooperative reorganization of an insolvent debtor." *In re Combustion Eng'g, Inc.*, 391 F.3d at 244. Consistent with the overarching purposes of bankruptcy, the Chapter 11 bankruptcy process is designed to encourage communication and negotiation between the parties. *In re Arnold*, 2:12-BK-15623-RK, 2012 WL 1820877, at *11 (Bankr. C.D. Cal. May 17, 2012).

One way the Bankruptcy Code encourages open discussion of interests and negotiation is through the requirement that there be at least one impaired class that votes in favor of the proposed Plan. 11 U.S.C. § 1129(a)(10); *In re Combustion Eng'g, Inc.*, 391 F.3d at 244 ("By providing impaired creditors the right to vote on confirmation, the Bankruptcy Code ensures the terms of the reorganization are monitored by those who have a financial stake in its outcome.") Impairment is defined "in the broadest possible terms." *In re L & J Anaheim Associates*, 995 F.2d 940, 942 (9th Cir. 1993) (hereinafter "*L & J Associates*") (citing *In re Madison Hotel Associates,* 749 F.2d 410, 418 (7th Cir. 1984)). To determine whether a claim is impaired, the Ninth Circuit has instructed that the analysis is limited to "[t]he narrow question [of] whether [the creditor's] 'legal, equitable, [or] contractual rights' were changed by the Plan; if so, its claim was impaired." *L & J Anaheim Associates*, 995 F.2d at 943.

Here, under the terms of the Plan, C&D's payment in full is delayed, and C&D must waive its right to a late fee and interest. (Doc. 13 at 11). Because the proposed plan does not leave unaltered C&D's contractual rights, C&D's claim is impaired. *L & J*

*Anaheim Associates*, 995 F.2d at 943 (holding a claim is impaired if it changes the creditor's "legal, equitable, [or] contractual rights").

To encourage cooperation and action on the part of the parties, the Code also provides a "cramdown provision,"[2] which is triggered if at least one impaired class consents and at least one of the impaired classes dissents from the proposed plan. 11 U.S.C. §1129(b). The Chapter 11 cramdown provision, however, at times may lead debtors to take actions at odds with the good faith requirement, as it "creates an incentive for a debtor to impair a friendly class under the plan that will accept." 6 Norton Bankr. L. & Prac. 3d §113:5. Such behavior shortchanges the communication and negotiation at the heart of the Chapter 11 process. *In re Combustion Eng'g, Inc.*, 391 F.3d at 244. For this reason, Courts view impairment engineered solely for this purpose, as "indicative of bad faith." *In re Hotel Associates of Tucson*, 165 B.R. 470 (B.A.P. 9th Cir. 1994).

The Plan, including the impairment, must have been proposed in good faith. 11 U.S.C. § 1129(a)(3). As the Bankruptcy Court pointed out in the hearing below, "the question posed is, is [the impairment] one in good faith or is this just manipulating the process to get yourself over the requirements." (Doc. 12 at 20).

"Section 1129(a)(3) does not define good faith." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002) (citing *In re Madison Hotel Assocs.*, 749 F.2d 410, 425

---

[2] "The Bankruptcy Code . . . 'provides that where all requirements for confirmation but [consent of all impaired parties] are met, the bankruptcy court *shall* confirm a Chapter 11 reorganization plan . . . 'if the plan does not discriminate unfairly, and is *fair and equitable,* with respect to each [impaired and non-consenting] class of claims.' 'This form of confirmation is commonly known in bankruptcy parlance as a 'cramdown' because the plan is crammed down the throats of the objecting class(es) of creditors.'" *In re Arnold*, at *12 (quoting *In re Bonner Mall Partnership*, 2 F.3d at 906) (emphasis in original).

(7th Cir.1994)). Rather, the Court must consider the "totality of circumstances surrounding the plan, the application of the principal of fundamental fairness in dealing with creditors, and whether the plan itself will fairly achieve a result consistent with the objectives and purposes of the Code." *In re Sylmar Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002).

One of the circumstances a court may consider in determining the good faith of the Plan is the debtor's pre-petition conduct. *See In re Alaskan Adventure Tours, Inc.*, A10-00282-DMD, 2010 WL 7920613, at *5 (Bankr. D. Alaska Nov. 17, 2010) (noting that pre-petition behavior "is part of a 'totality of circumstances' inquiry"). A court may also consider the necessity for the impairment. *In re Hotel Associates of Tucson*, 165 B.R. at 475.

*In re Dune Hotel Associates*, 188 B.R. 174 (1995), is a classic example of a debtor's attempt to engineer a cramdown rather than arrive at the kind of consensual reorganization Chapter 11 intends to facilitate. In *Dune*, the debtor had a single real estate asset, securing a multi-million dollar loan. When the debtor-in-possession proposed its Plan, the single accepting impaired class was the debtor's pre-petition law firm, Wolf Block. *Id.* at 184. Contrary to its standard practice of billing the debtor's corporate parent, Wolf Block submitted a claim of $2,139.57 which debtor alleged would be impaired "by . . . pay[ment] . . . in two installments within six months after the Effective Date of the Initial Plan." *Id.* at 185. The secured mortgage holder, the debtor's only truly impaired creditor, held more than 99% of the claims against the debtor and opposed the plan. *Id.* Finding that the Wolf Block claim was intended to engineer a cramdown of the claim of

the only truly impaired creditor, the court rejected the Wolf Block claim. *Id.* at 186. *But see In re Vill. at Camp Bowie I, L.P.*, 454 B.R. at 710 (example of single asset real estate reorganization where impairment was not "a situation where artificial impairment was used simply to avoid negotiation with the debtor's principal secured creditor").

Here, we are presented with a very similar case. Like *Dune*, we are dealing with a single asset real estate reorganization.  Similar to the *Dune* mortgage holder, here FNMA holds over 99% of all claims. (Doc. 12-1 at 40–46). As in *Dune*, the Debtor's pre-petition counsel is submitting a small claim and voting to support the plan which definitionally impairs that claim. Even the structure and timing of the impaired payments is similar. Like in *Dune*, there are questions about how C&D's claim arose and the pre-petition behavior of the Debtor and its law firm.

To be sure, unlike Wolf Block in *Dune*, here C&D did not have a history of an alternative longstanding billing practice. Nonetheless, here there are at least two other factors that lead us to affirm the Bankruptcy Court's determination: the pre-petition behavior of the Debtor and the striking number of  "coincidences" surrounding the genesis of C&D's claim, both of which suggest a manufactured claim.

First, the pre-petition behavior of the Debtor and C&D is evidence of possible side-dealing, or at least of a lack of communication and dialogue, contrary to the purposes of the Chapter 11 process. As FNMA pointed out to the Bankruptcy Court, there are a large number of unusual coincidences involved in the arrangement between C&D and Phoenix Premier. (Doc 12-5 at 72–73). For instance, the "evergreen retainer" agreed to is atypical for C&D.  (Doc. 13 at 7). There are also billing irregularities, such as a lack

of bookkeeping indicating the nature of the "earned retainer," and lack of clarity over how the retainer was calculated and for what it was paid. (Doc. 13 at 7). Likewise, the near-simultaneous formation of C&D, payment of the retainer, signing of the engagement agreement between C&D and Debtor, and filing of the Petition is indicative, as is the large size of the "earned retainer" compared with C&D's monthly invoices filed since the Petition date. (Doc. 13 at 6–7, 10, 13).

Nor is there any apparent necessity for the impairment of C&D's claim. Unlike Wolf Block's claim in *Dune*, here Debtor's pre-petition counsel has not only a claim, but has security sitting in its own trust account in a sum five times the amount of the *de minimus* claim in question. As the bankruptcy court correctly noted, the retainer could simply be used to offset Debtor's obligations to Coleman. (Doc. 13 at 12). Beyond engineering a cramdown, there does not appear to be any justification for the impairment.

"The bankruptcy judge is in the best position to assess the good faith of the parties' proposals." *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984). Here, the bankruptcy judge found that "the Debtor's Plan lacks (i) the requirement of good faith . . . and (ii) the requirement of an accepting impaired class." (Doc. 12-5 at 62). This case bears striking similarity to *Dune* and other single asset real estate reorganizations in which the Debtor-in-possession manufactures an impaired claim in order to cramdown the Debtor's principal secured creditor and is found to have acted in bad faith. The large number of coincidences involved in the timing of the claim creation itself, coupled with the lack of any apparent necessity for the impairment, also weigh in favor of a finding of bad faith.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In short, given the totality of the circumstances, the Court cannot say the Bankruptcy Court committed clear error in its decision that the Debtor's Plan lacked the good faith required under 11 U.S.C. §1129(a)(3).

## CONCLUSION

Good faith is required for a Chapter 11 reorganization plan to be approved by the court. 11 U.S.C. §1129(a)(3); *L & J Associates,* 995 F.2d at 943; *In re Tucker,* 989 F.2d at 330. Given the totality of the circumstances reviewed above, the Court does not find clear error on the part of the Bankruptcy Court.

**IT IS THEREFORE ORDERED** that the Bankruptcy Court's decision is **AFFIRMED.**

**IT IS FURTHER ORDERED** that Appellant Phoenix Premier Properties, LLC, appeal (Doc. 1) is **DENIED**. The Clerk is directed to terminate this action.

Dated this 25th day of June, 2012.

G. Murray Snow
United States District Judge